IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 15, 2011 Session

# IN RE: JAIDEN C.W. And CAIDEN J.W., Children Under the Age of 18 years (d.o.b. 7/27/2006)

**Direct Appeal from the Juvenile Court for Coffee County**
**No. 07J-1623      Timothy R. Brock, Judge**

---

**No. M2010-01105-COA-R3-JV - Filed June 7, 2011**

---

This is a child support case.  The juvenile court found, *inter alia*, the father owed a child support arrearage of $21,356.63.  We affirm in part, vacate in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in part, Vacated in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Michelle M. Benjamin, Winchester, Tennessee, for the appellant.

Eric J. Burch, Manchester, Tennessee, for the appellee.

## MEMORANDUM OPINION[1]

The plaintiff/appellant, Greg Warren ("Father"), and the defendant/appellee, Jessica Jones ("Mother"), are the unmarried parents of two minor children.[2]  The couple dated for

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]A June 4, 2009 order named Greg Warren the legal father of the two minor children; however, the
(continued...)

two months in the summer of 2005 and later renewed their relationship after Mother notified Father she was pregnant. Mother and Father began living together in late 2005 or early 2006, alternating between their parents' residences. Mother gave birth to the children in July 2006, and the parties continued their relationship through October 2007. During this period, Father provided Mother $400 monthly to cover expenses when he traveled for work. In late October 2007, however, the relationship ended and Mother demanded money to support the children.

In November 2007, Father petitioned to legitimate the minor children and for designation as primary residential parent.[3] Mother counter-petitioned for child support. After a lengthy series of hearings, the juvenile court entered an amended final judgment adjudicating the competing petitions. The court found the parties primarily resided together from the children's births until February 1, 2007, and the parties equally supported the children from February 1, 2007, until October 1, 2007. The court thus concluded no child support was due prior to October 1, 2007. Father did, however, owe a child support arrearage of $21,356.63 for the period beginning October 1, 2007, and ending September 28, 2009. The juvenile court in its amended final order entered a judgment in favor of Mother for $21,356.63, calculated Father's prospective child support obligation, addressed other disputed matters not relevant to this appeal, and declined to award attorney's fees to either party. Father timely appealed.

The parties collectively present the following issues, as we perceive them, for appellate review:

(1)     whether the evidence preponderates against the juvenile court's factual finding that Father owed retroactive child support beginning October 1, 2007;

(2)     whether Mother has demonstrated the juvenile court incorrectly imputed income to her at $29,300 per year until August 2008;

---

[2](...continued) juvenile court subsequently granted a motion for new trial vacating that order. At the resulting trial, the parties agreed Greg Warren was the legal father of the children at issue, and the juvenile court stated its intent specifically to include this finding in the resulting order. The judgment appealed from nonetheless does not expressly find Greg Warren is the legal father of the children, although it does hold the children are "the parties' minor children." We conclude this finding, as well as the adjudication of Father's support and parenting obligations, resolves the parentage issue for final judgment purposes. We note, however, the judgment does not comply with the express mandate of Tennessee Code Annotated section 36-2-311(a).

[3]We note the Tennessee Rules of Civil Procedure govern paternity and child custody proceedings. Tenn. R. Juv. P. 1(b).

(3)     whether the juvenile court correctly calculated Father's child support arrearage from August 22, 2008, to September 28, 2009, based upon an annual income of $107,000;

(4)     whether the juvenile court abused its discretion when it required the parties to pay their own attorney's fees; and

(5)     whether Mother is entitled to an award of attorney's fees on appeal.

Although the parties' briefs touch upon additional perceived errors in the juvenile court's decision, we limit our review to the issues presented.

This Court in *Richardson v. Spanos*, 189 S.W.3d 720 (Tenn. Ct. App. 2005), set forth the standard of review governing child support cases thus:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines.

> Under current law, the amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive amount of child support owed. This amount of support is rebuttable. Accordingly, trial courts may, in their discretion, deviate from the amount of support required by the Child Support Guidelines, but when they do, they must make specific written findings regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case.

> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. Appellate courts do not have the latitude to substitute their discretion for that of the trial court. Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, and reasonable minds can disagree about its correctness. Discretionary decisions must, however, take the applicable law and the relevant facts into account. Accordingly, a trial

court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.

*Spanos*, 189 S.W.3d at 725 (internal citations omitted). "When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations *de novo* without any presumption of correctness." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 525 (Tenn. 2010) (citing *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)).

Our review of the issues presented in this case requires consideration of several distinct time periods which the juvenile court addressed in its decision. These time periods include: (1) the period from the children's birth until February 1, 2007, (2) the period from February 1, 2007, until October 1, 2007, (3) the period from October 1, 2007, until August 22, 2008, (4) the period from August 22, 2008, until September 28, 2009, (5) the period from September 28, 2009, until December 17, 2009, and (6) the period beginning December 18, 2009, and continuing forward.[4] The parties dispute whether the juvenile court erred in calculating the child support obligation due during several of these periods, and Mother submits she is entitled to an award of attorney's fees. We will address the relevant issues in turn.

The first issue before this Court is whether the juvenile court erred when it set October 1, 2007, as the date on which Father's child support arrearage started to accrue. Father submits the arrearage should have accrued beginning November 1, 2007, contending the court erred as a factual matter when it determined he ceased providing equal support for the children on October 1. Mother argues, on the other hand, Father ceased providing equal support for the children on February 1, 2007, the date on which the parties stopped living together. Both parties' arguments must fail, however, because the evidence does not preponderate against the court's finding that the parties ceased providing equal support for the children on October 1.[5]

---

[4]Neither party challenges the award of support from September 28, 2009, until December 17, 2009, or the award of support beginning December 18, 2009.

[5]Neither party challenges the juvenile court's conclusion that Father did not owe retroactive child support for the period in which the parties equally supported the children.

In support of his argument, Father points to trial testimony establishing the parties' relationship continued through the middle or end of October. Father's contention that the relationship continued through the end of October is further evidenced by a Termination of Domestic Partnership form that he filed for insurance purposes stating the relationship ended on October 25, 2007.[6] This evidence, however, does not necessarily establish that Father continued to provide equal support for the children through the end of October 2007, and Mother testified that Father was not seeing the children very often from October 2007 to August 2008. The evidence therefore does not preponderate against the juvenile court's conclusion that Father ceased providing equal support for the children on October 1, 2007.

Mother, on the other hand, argues the juvenile court erred when it concluded the parties provided equal support for the children from February 1, 2007, to October 1, 2007, because Father often traveled for work during this period and she resided with her parents. Ignoring Mother's failure to cite to the record in support of her argument, she has not demonstrated the evidence preponderates against the juvenile court's factual determination. As Mother acknowledges in her brief, Father visited with Mother and the children five to ten hours a day when he returned from work, provided Mother with $400 per month to help support the children in his absence, and purchased a number of items for the children. Additionally, Father testified he saw the children every day of the week when he was not working and the parties were splitting time between their parents' homes during this period. On the limited record before us, the juvenile court's factual finding that the parties provided equal support for the children from February 1, 2007, until October 1, 2007, must stand.

The next issue before this Court concerns whether the juvenile court correctly imputed income to Mother in the amount of $29,300 when determining the child support due from October 1, 2007, to August 22, 2008. Mother submits the juvenile court gave no reasoning for its imputation but nevertheless argues the court erroneously failed to recognize Mother's role as a stay-at-home parent when it concluded she was willfully underemployed. Courts employ the $29,300 figure, however, to impute income to a parent who fails to provide reliable evidence of income or income potential, not to provide an upward deviation in income for a willfully underemployed parent. *See* Tenn. Comp. R. & Regs. Rule 1240-2-4-.04(3)(a)(2)(iv) (2008); *see also Miller v. Welch,* --- S.W.3d ----, No. E2009–01942–COA–R3–CV, 2010 WL 3984734, at *5 (Tenn. Ct. App. Oct. 12, 2010), *perm. app. denied* (Tenn. Mar. 9, 2011). Because Mother does not argue she otherwise provided reliable evidence of her income or income potential from October 1, 2007, to August 22, 2008, we decline to overturn the juvenile court's imputation of income for this period.

_____

[6]Father alone completed and signed the Termination of Domestic Partnership form establishing October 25 as the end of the parties' relationship.

The third issue before this Court is whether the juvenile court correctly determined Father's child support obligation from August 22, 2008, to September 28, 2009, using an income of $107,000. The juvenile court entered an order of temporary child support on August 18, 2008, setting Father's child support obligation at $329.56 per week based on a monthly gross income of $8,917.00.[7] The order, effective August 22, 2008, specifically reserved all remaining issues regarding child support arrearages for trial and did not resolve the outstanding issue of paternity. The order therefore was not a final judgment. At the final trial in the matter, the juvenile court nevertheless relied exclusively on the August 18 order—despite the presentation of evidence showing Father ceased making $107,000 in November 2008—to determine Father owed a child support arrearage of $8,082.12 for the period of August 22, 2008, to September 28, 2009.

Father contends the juvenile court's calculation of his child support arrearage for this period "causes an injustice." Father explains the unrefuted testimony at trial established he lost his job in the first week of November 2008 and, despite his best efforts, did not rejoin the workforce until July 5, 2009, when he obtained a full-time job earning $900 per week.[8] Father concludes the court should have determined any child support arrearage based on his actual income for the period in question. Mother disagrees, contending Tennessee Code Annotated section 36-5-101(f)(1) prohibits modification of a child support order for any period prior to the filing of a petition for modification.[9] Because Father did not petition or

---

[7]The parties suggest the August 18 order was an "agreed order." The order, however, states the juvenile court based its findings on "the pleadings before the Court and arguments of counsel." Additionally, the parties did not "affirmatively acknowledge that no action by the parties shall be effective to reduce child support after the due date of each payment, and that they understand that court approval must be obtained before child support may be reduced, unless such payments are automatically reduced or terminated under the terms of the agreement." Tenn. Code Ann. § 36-5-101(j) (2010). We will therefore treat the order as an award of temporary child support. *See* Tenn. Code Ann. § 36-2-310 (2010) ("The court shall, upon motion of the party, enter a temporary order of child support pending the final determination of paternity upon a showing of clear and convincing evidence of parentage on the basis of genetic tests.").

[8]Father concedes in his brief that he received unemployment compensation during this period.

[9]Tennessee Code Annotated section 36-5-101(f)(1) provides:

Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties. If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from

(continued...)

move to modify the August 18 order at any point throughout these proceedings, Mother contends the temporary order controls.[10]

We conclude the juvenile court should have determined Father's child support obligation for the period in question based on his actual income.[11] In this case, Father was unemployed for a significant period of time pending the first trial. This undisputed fact appears to have been disregarded by the juvenile court. Because the "fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support," *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009), we conclude the juvenile court should have accounted for this period of unemployment when calculating Father's child support arrearage. The existence of a temporary order setting child support pending trial does not bar reexamination and retroactive modification of the award at trial; rather, a temporary order of child support is an interlocutory order subject to retroactive modification.[12] *See State ex rel. Jackson v. Jackson*, No. M2006-00598-COA-R3-CV, 2008 WL 820495, at *4–5 (Tenn. Ct. App. Mar. 26, 2008), *perm. app. denied* (Tenn. Aug. 25,

_____

[9](...continued)
the date of the arrearage, at the rate of twelve percent (12%) per year. All interest that accumulates on arrearages shall be considered child support. Computation of interest shall not be the responsibility of the clerk.

Tenn. Code Ann. § 36-5-101(f)(1) (2010).

[10]We note Father did move to alter or amend purported final orders that relied to varying degrees on the August 18 order.

[11]Neither party addresses whether the final trial in this matter was a "hearing on retroactive support." Tenn. Comp. R. & Regs. Rule 1240-2-4-.06(3). Additionally, neither party addresses whether the juvenile court should have used Father's actual income during the period in question for purposes of determining his "average monthly income" pursuant to Tenn. Comp. R. & Regs. Rule 1240-2-4-.06(3)(a) (2008) instead of, as Father submits here, for determining a revised amount owed under the retroactively modifiable temporary order. Indeed, there are several potential issues the parties do not address, which we decline to consider *sua sponte*. We have instead attempted to resolve this matter on the limited arguments before us.

[12]This Court's opinion in *State ex rel. Jackson v. Jackson*, No. M2006-00598-COA-R3-CV, 2008 WL 820495, at *4–5 (Tenn. Ct. App. Mar. 26, 2008), *perm. app. den*. (Tenn. Aug. 25, 2008), although arising in the context of a divorce, impliedly concludes that a temporary or *pendente lite* order for child support does not fall within Tennessee Code Annotated section 36-5-101(f)(1)'s provision regarding "[a]ny order for child support." This Court reasoned in *Jackson* that Rule 54.02 of the Tennessee Rules of Civil Procedure permits revision of an interlocutory order at any time prior to the entry of a final judgment. *Jackson*, 2008 WL 820495, at *4. Because the *pendente lite* order on child support in that case did not resolve all the claims, rights, and liabilities of the parties, it was a modifiable interlocutory order. *Id.* at *5. The temporary order of child support in this case, despite arising in a different factual setting, is equally interlocutory and therefore subject to retroactive modification.

2008) (holding a *pendente lite* child support order in a divorce case was a retroactively modifiable interlocutory order); *see also Melvin v. Johnson-Melvin*, No. M2004-02106-COA-R3-CV, 2006 WL 1132042, at *8 (Tenn. Ct. App. Apr. 27, 2006), *perm. app. denied* (Tenn. Oct. 16, 2006) (citations omitted). If the evidence at trial demonstrates developments subsequent to the entry of the temporary order undermine its calculation, the court should modify the award to reflect the parties' actual circumstances. We must conclude the juvenile court erred in calculating Father's child support arrearage from August 22, 2008, to September 28, 2009, without taking into account the approximately nine-month period of time in which he was unemployed. We accordingly vacate the juvenile court's award on this single issue and remand for further consideration.

The next issue before this Court is whether the juvenile court abused its discretion when it declined to award attorney's fees to Mother. Mother cites Tennessee Code Annotated section 36-2-311(a)(14) in support of her argument that an award of attorney's fees was appropriate. Tennessee Code Annotated section 36-2-311(a)(14) provides that an order establishing parentage shall include a "[d]etermination of the liability for counsel fees to either or both parties after consideration of all relevant factors." Tenn. Code Ann. § 36-2-311(a)(14). Mother, however, has not demonstrated in the limited argument before this Court that the juvenile court abused its discretion. *See Spanos*, 189 S.W.3d at 729 (recognizing that appellate courts review an award of attorney's fees for an abuse of discretion). Her argument on this issue, which does not contain citations to the record, primarily points to an asserted disparity between the parties' incomes and the undue delay allegedly caused by Father as supporting an award of attorney's fees.[13] Income disparity,

---

[13]Rule 27 of the Tennessee Rules of Appellate Procedure requires the brief of an appellant to contain:

> (6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

> (7) An argument, which may be preceded by a summary of argument, setting forth:
> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on . . . .

Tenn. R. App. P. 27(a)(6), (7). The appellee's brief may exclude a statement of the facts in certain instances. Tenn. R. App. P. 27(b). The appellee may not, however, forego citations to the record as required in subsection 7(A) of Rule 27. Tenn. R. App. P. 27(b). The appellant's brief, in addition to its substantive flaws, does not adequately cite to the record in the argument section. And the appellee's brief, which does not contain a single citation to the record throughout the entire argument section, comes dangerously close

(continued...)

however, is not the only factor a court may consider when allocating attorney's fees, *see Kurts v. Parrish*, No. W2004-00021-COA-R3-CV, 2004 WL 2609195, at *7 (Tenn. Ct. App. Nov. 17, 2004), and our review of the record suggests each party may have contributed to the unusual length and high costs of these proceedings. Because Mother does not cite any factual basis upon which this Court can find an abuse of discretion, we affirm the lower court's decision. We likewise decline in our discretion to award Mother attorney's fees on appeal, noting Mother has not adequately addressed any factors which might have supported her request.[14]

### Conclusion

For the foregoing reasons, we affirm in part and vacate in part in the decision of the juvenile court and remand this case for further proceedings consistent with our opinion. Costs of this appeal are taxed to appellee, Jessica Jones, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[13](...continued)
to waiving argument on the issues presented.

[14]We express no opinion on whether Tennessee Code Annotated section 36-2-311(a)(14), which Mother cites as the sole basis for an award of attorney's fees on appeal, gives this Court authority to grant her request under the facts.