IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 19, 2012 Session

## JOHN ALGERNON GUTHRIE v. KARAN TRACY GUTHRIE

**Direct Appeal from the Chancery Court for Dyer County**
**No. 04C547      James F. Butler, Chancellor**

---

**No. W2012-00056-COA-R3-CV - Filed October 23, 2012**

---

This case involves the modification of child support. On appeal, Mother argues that the trial court erred by failing to find that Father was voluntarily underemployed, and erred in calculating Father's child support obligation. Mother and Father argue that the trial court erred in denying their requests for an award of attorney's fees and costs at trial. Additionally, Mother and Father request an award of attorney's fees and costs incurred on appeal. We affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Karan Guthrie, *Pro se*.

John C. Ryland, Memphis, Tennessee, for the appelleea, John Algernon Guthrie.

### OPINION

#### I. Background and Procedural History

On June 28, 1986, Karan Tracy Guthrie ("Mother") and John Algernon Guthrie ("Father") were married. During the marriage, Father worked as an occupational therapist and Mother worked as a computer programmer. Two children were born of the marriage. Subsequently, on March 3, 2006, the parties were divorced by a Final Decree entered by the trial court. The trial court entered a permanent parenting plan naming Mother the primary residential parent and providing Father with ninety-four (94) days of parenting time each year. The trial court further set Father's child support obligation at $893.00 per month based

on the income he earned as an occupational therapist.

On June 30, 2010, shortly after the parties' oldest child reached the age of majority and graduated from high school, Father filed a petition to modify child support. Father's petition provided that he worked as an occupational therapist on a "PRN basis",[1] and that his gross annual income was $59,719.00, or $4,968.52 per month. In response, Mother alleged that Father was voluntarily underemployed, and requested that the trial court set Father's child support obligation as if he worked full-time earning a gross monthly income of $8,667.00.

The trial court conducted a hearing on October 5, 2011. At trial, Father testified that he could no longer work as an occupational therapist due to multiple health issues.[2] Father further stated that his current wife, the CEO of a corporation which owns forty-four (44) Sonic Drive-In restaurants, assisted him in acquiring a job working as the manager of one of the restaurants. In this position, Father stated that he earns approximately $2,000 per month with the opportunity to earn an additional monthly bonus equal to twenty-five percent (25%) of the net monthly profits of the restaurant. Following the hearing, on November 3, 2011, the trial court entered a letter ruling. In its ruling, the trial court found that Father's health

---

[1] "PRN" is an abbreviation from the Latin phrase *pro re nata*, which means "[a]s the occasion arises; as necessary." Stedman's Medical Dictionary 335270 (27th ed. 2000). In his brief, Father explains that, as opposed to a full-time employee, "a therapist working on a PRN basis is paid an increased hourly rate because the employer does not have to pay the costs of employer-sponsored benefits for that employee."

[2] As the trial court noted in its final order:

Father's undisputed health issues are summarized as follows:

a.      Father sustained a back injury at work moving equipment and a patient.

b.      Father's heart problems include high blood pressure and atrial fibrillation.

c.      Lumbar scoliosis in his spine.

d.      Hand numbness. Father had carpel tunnel and ulnar release. His numbness is worse on the left than the right. He had a standard carpel tunnel surgery with release of the median and ulnar nerve. He now has weakness in his hands and cannot apply enough pressure to a muscle to get it to release which interferes with his occupation.

e.      Torn miniscus. Husband tore a miniscus in his left knee and had surgery to remove it. Now Husband testifies he has arthritis and instability in his left knee which limits his ability to stand for long periods and interferes with his lifting of patients which requires lifting mechanics in his legs.

problems were undisputed and rejected Mother's claim that Father was voluntarily underemployed. The trial court found that Father's income for the period of May 14, 2010 through December 31, 2010 was $4,975.58 per month, and that beginning January 1, 2011, his income was $2,000.00 per month. Based on these findings, and the fact that the parties' oldest child reached the age of majority, the trial court concluded that a significant variance existed during both time periods and modified Father's monthly child support obligation. The trial court concluded that Father's child support obligation from May 14, 2010 through December 31, 2010 was $569.00 per month, and that beginning January 1, 2011, his obligation was $259.00 per month. As a result, the trial court awarded Father a judgment in the amount of $7,840.82 for his overpayment of child support, and noted that the judgment would not be fully satisfied by offsetting or crediting him for his ongoing child support obligation, and ordered Mother to pay any outstanding balance remaining within thirty days of the date when the parties' remaining minor child reached the age of majority. On December 20, 2011, the trial court entered an order memorializing its letter ruling. Mother timely filed a notice of appeal to this Court.

## II. Issues Presented

The following issues, as restated, are presented for our review:

(1)     Whether the trial court erred in finding that Father was not voluntarily underemployed,

(2)     Whether the trial court erred in establishing the first time period of Father's income determination for child support purposes as May 14, 2010 through December 31, 2010, and the second time period beginning January 1, 2011,

(3)     Whether the trial court erred by not awarding attorney's fees and litigation expenses to either party, and

(4)     Whether either party is entitled to attorney's fees and costs incurred on appeal.

## III.  Standard of Review

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law de novo, however, with

no presumption of correctness.  Tenn. R. App. P. 13(d).  Our review of a trial court's application of the law to the facts is de novo, with no presumption of correctness.  *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

## IV.  Discussion

### *A. Child Support*

### 1.  Voluntary Underemployment

We begin by addressing Mother's argument that the trial court erred in failing to find Father willfully and voluntarily underemployed.  The burden of proving that an obligor parent is willfully or voluntary underemployment is on the party opposing the modification.  *Demers v. Demers*, 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003).  The determination of whether a parent is willfully and voluntarily underemployed is a highly fact-driven inquiry that must take all attendant circumstances into account.  *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005) (citations omitted).  Accordingly, we review the trial court's determination in accordance with Rule 13(d) of the Tennessee Rules of Appellate Procedure, presuming the trial court's findings of fact to be correct unless the evidence preponderates otherwise, and we give substantial deference to the trial court's determination, particularly when it is based on its assessment of witness credibility.  *Id.* (citations omitted).  Moreover, "'[a] determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support.  The determination may be based on any intentional choice or act that adversely affects a parent's income.'"  *Miller v. Welch*, 340 S.W.3d 708, 712 (Tenn. Ct. App. 2010)(quoting Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii)(I)).  When a parent's choice to work in a lower-paying job is reasonable and in good faith, however, the courts will not find the parent to be willfully and voluntarily underemployed.  *Id.*

Regarding Mother's claim that Father was willfully and voluntarily underemployed, the trial court concluded as follows:

> Father has a Bachelor of Science Degree in occupational therapy from the University of Texas.  Until recently, this was his vocation.  The physical demands of such an occupation involve lifting people of various sizes and weights, moving actively their joints and limbs, good body mechanics and physically heavy work at times.
>
> . . . .

-4-

In [2011], Husband concluded he could not continue to work as an occupational therapist because of the physical demands. Husband found an opportunity to manage a Sonic restaurant through his wife. His contract was introduced into evidence and it is the same contract that managers of Sonic's have. He earns now $24,000 per year and is eligible for a 25% bonus of the net profits of the store. The Sonic he manages is in Dover, Tennessee and was not profitable when it was purchased and has not yet achieved profitability to where a bonus would be available. While Mother pointed out that the Sonic is owned by a corporation which Father's current wife controls, there was no proof that Father took this job in order to lower his child support or avoid it. On the contrary, the fact that Father had this opportunity was his good fortune and being married to the de facto owner should be advantageous to him for job security and flexibility. Job security is important in a time of high national unemployment. Efforts to prove that Father is voluntarily underemployed fall short of the standard. Even proof of Father's lifestyle is not sufficient in this case since by all accounts, his current wife is financially well off and is able to enhance his lifestyle with her own funds. Thus, the Court makes a finding of fact that the Father is not voluntarily underemployed.

As noted above, Father filed his petition to modify child support based on the parties' oldest child reaching the age of majority and his inability to continue working as an occupational therapist. Despite Mother's contentions to the contrary, Father testified that while he worked as an occupational therapist, he applied to work with other companies on a PRN basis but did not receive additional work from them. Although Mother had the burden to prove that Father was voluntarily underemployed, she failed to counter the evidence presented by Father regarding his health issues. The undisputed evidence in the record clearly provides that Father's decision to change occupations was prompted by his inability to meet the physical demands working as an occupational therapist. While Father's position at Sonic requires him to work more hours than he did as an occupational therapist, the physical demands of the job are much less given that most of his time is spent sitting at a desk, overseeing employees, and taking food orders. Thus, we find that Father's decision to accept a lower-paying job was reasonable and made in good faith. Moreover, although Mother insists that Father's health issues were not undisputed at trial, the only objection in the record arose when Mother's attorney asserted that Father could not testify regarding his medical diagnoses. The trial court, however, correctly ruled that Father could testify to his physical condition and physical limitations. *See Brewer v. Brewer*, No. M2005-02844-COA-R3CV, 2007 WL 3005346, at *9 (Tenn. Ct. App. Oct. 15, 2007) ("A lay witness may testify to his 'physical condition' if he sets forth facts to support the alleged symptoms and limitations.") (citations omitted).

Additionally, Mother argues that the trial court erred by failing to consider evidence of Father's lifestyle as a basis for finding that Father was voluntarily underemployed.[3] The trial court did, however, consider the evidence of Father's lifestyle with his new spouse. In fact, the trial court's findings provide that Father's "current wife is financially well off and is able to enhance his lifestyle with her own funds." While Mother may disagree with the trial court's conclusion, we find no error in the trial court's decision not to impute additional income to Father based on the financial well-being of his current spouse. After thoroughly reviewing the record, giving substantial deference to the trial court's credibility determinations, we conclude that the evidence does not preponderate against the trial court's finding that Father was not voluntarily underemployed.

## 2. Determination of Father's Child Support Obligation

Next, we address Mother's argument that the trial court erred in establishing the first time period of Father's income determination for child support purposes as May 14, 2010 through December 31, 2010, and the second time period beginning January 1, 2011. Regarding Father's income for purposes of calculating his child support obligation, the trial court concluded that, "[b]ased on the proof, the Court finds that the Father's income for child support purposes from May 14, 2010, through December 31, 2010, was $4,976.58 per month. Beginning January 1, 2011, Father's income is $2,000.00 per month."

Father concedes, and we agree, that the trial court erred in establishing the two time periods for his income determination. Father's employment contract with Sonic provides that he began working on May 16, 2011. Therefore, the first time period should be from May 14, 2010 to May 15, 2011, with the second time period beginning on May 16, 2011. Father's child support obligation during the first time period was $569.00 per month. Father's child support obligation during the second time period was $259.00 per month. Therefore, between January 1, 2011 and May 15, 2011, Father owed $1,395.00 in additional child support. As a result, we reverse the $7,840.82 judgment awarded by the trial court to Father.

---

[3]Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii) provides, in pertinent part:

The following factors may be considered by a tribunal when making a determination of willful and voluntary underemployment or unemployment:

. . .

(IV) A parent's extravagant lifestyle, including ownership of valuable assets and resources (such as an expensive home or automobile), that appears inappropriate or unreasonable for the income claimed by the parent; . . . .

On remand, the judgment amount shall be reduced to $6,445.82.

### B. Attorney's Fees

Finally, we must address the parties' claims that the trial court erred in denying their requests for attorney's fees and expenses at trial. Also, each party requests an award of attorney's fees incurred on appeal. Pursuant to Tennessee Code Annotated section 36-5-103(c):

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2010). This statutory provision also applies to awards of attorney fees incurred on appeal. *See Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004)("Tenn. Code Ann. § 36-5-103(c) (Supp.2004) vests in this court the discretionary authority to award these fees and costs in proper cases.").

In the proceedings below, the trial court concluded as follows:

> Both parties have employed competent attorneys to represent them in this case and both parties have been partially successful in their respective Petitions. The Court is persuaded that neither party should recover attorney's fees from the other party in this case. Therefore, the Court declines to award attorney's fees or litigation expenses to either party.

"The allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) (citing *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992); *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964)). After reviewing the record, we find no error in the trial court's discretionary decision that each party bear their own attorney's fees and expenses. Further, exercising our discretion, we decline to award attorney's fees incurred on appeal.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order modifying Father's child support obligation. However, because the trial court erred in determining the amount owed to Father for overpayment of child support, we reverse the $7,840.82 judgment. On remand, the judgment amount shall be reduced to $6,445.82 consistent with this Opinion. Costs of this appeal are taxed equally to the Appellant, Karan Tracy Guthrie, and the Appellee, John Algernon Guthrie, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE