IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 9, 2011

## ROBIN CAMPBELL ARMBRISTER v. EDWIN C. ARMBRISTER, JR.

**Appeal from the Circuit Court for Sevier County**
**No. 2007-0523-II      Richard R. Vance, Judge**

---

**No. E2010-01561-COA-R3-CV-FILED-NOVEMBER 21, 2011**

---

At issue in this appeal is the amount of income that can be imputed to the father for child support, as well as whether the mother should be charged with the attorney fees and costs in regard to an order of protection. The trial court found that the father was voluntarily underemployed. Finding that the evidence does not preponderate against the trial court's finding of voluntary underemployment, we affirm the trial court as to that matter. We reverse the trial court's ruling regarding the attorney fees and costs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part and Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Bruce Hill, Sevierville, Tennessee, for the appellant, Edwin C. Armbrister, Jr.

Kevin W. Shepherd, Maryville, Tennessee, for the appellee, Robin Campbell Armbrister.

**OPINION**

**I. BACKGROUND**

Robin Campbell Armbrister ("Mother") and Edwin Cleigh Armbrister, Jr. ("Father") were married in 1994. Two children, currently minors, were born of the marriage. Mother filed for divorce on August 13, 2007, at which time she received an ex parte order of protection against Father. The relationship between the parties was contentious. Numerous motions and hearings followed the divorce filing. In August 2009, the parties announced a partial agreement, which included stipulations concerning entry of the divorce, the division

of the marital property and debt, and a portion of pending motions. Issues regarding co-parenting, an order of protection, and certain contempts remained.

Mother was employed with the Sevier County Schools as a psychologist. Her income was $66,000 per year. As for Father's educational background, he had received an undergraduate degree in Marketing from Virginia Tech, along with an MBA and JD from the University of Tennessee. In the late 1990s, Father was offered a full-time, non-tenure track faculty position with the University of Tennessee. He decided, however, to launch a summer camp for performing arts named "Camp Curtain Call."[1]

At the time of the divorce, Father was earning income through the camp, which lasts 9 weeks each summer. Father owns 78% of the shares of the camp corporation, assessed by Father at $5,000 per share. The property on which the camp is located, a 37-acre piece of real estate in Virginia, is owned by a business entity known as "Presto Properties, LLC." Father owns 80% of Presto Properties, LLC, and Mother owns 20%. Father opined that the yearly income from Presto Properties, LLC, was around $90,000, of which approximately $36,000 went to pay a mortgage. He noted that he also works magic shows during the off-season. Father placed his income at $2,500 per month in his proposed Permanent Parenting Plan ("Plan"). At trial, he testified that his monthly income was $2,750. He acknowledged that he could work as a part-time professor, earning $24,000 to $30,000 per year in that position. He did not include his affidavit of income and expenses in the record.

A final hearing for co-parenting, child support, alimony, and attorney fees was held in this matter on November 17, 2009. At the hearing, only Mother and Father testified and neither party introduced any business documentation concerning Father's income - i.e., no tax returns or pay stubs. Father testified at the hearing that he "had to cease paying himself any salary at all starting in September of 2008." He noted as follows:

Q. Have you been able to resume paying yourself $2,500.00?

A. I ceased in September of '08 and I haven't been able to continue that through the camp.

Q. Where does your income come from now?

A. Largely -- well, I still do some speaking engagements. I have more aggressively re-launched, I guess, my magic business, World of Wonder

---

[1]Father testified that in graduate school, he prepared a business plan for the camp that won a competition.

Productions, in recent months and so forth. I'm a member of a speakers bureau with HR Group out of Greensboro, North Carolina. I do get speaking engagements that are involved more around business. I have partnered with a human resource consulting firm in Virginia called HR Alliance. They sponsor a speakers bureau, or we have for the last two years. One of those speaker sessions -- it's a speaker series, is our presentation and then we invite three, four, or five other speakers on several dates. But I also, using credit card advances, promotional at the time, took cash advances on credit cards and loaned Camp Curtain Call money so that the camp could use that as working capital. And Camp Curtain Call, as [it's] been able to, has been making re-payments of that loan to me, all properly documented and so forth. So that's been some of the money that I've been able to live off of. But I've also had a small loan from a family member to fund legal expenses. . . .

During closing argument, counsel for Mother asked that the order of protection be extended and requested attorney fees.

At the conclusion of the hearing, the trial court ruled as follows:

THE COURT: . . . These parties were previously divorced and the property issues resolved by order entered September 23rd, 2009 in this Court.

\* \* \*

Both these parents are highly intelligent, well-educated, each having the equivalent doctoral degrees. The careers of each of them has involved professional care, supervision, counseling of children by the mother as a school psychologist, by the father as a camp owner/director in which the mother also participated. All the more reason why it has disturbed the Court to see their behavior with respect to their own children.

\* \* \*

I'm going to extend the current order of protection for a period of one year from today. After its expiration, unless further extended, then the terms of that order will become a permanent injunction and a restraining order, essentially that is to not harass, annoy, threaten Ms. Armbrister.

\* \* \*

-3-

. . . The mother's income is well established. It's undisputed that she earns $66,000.00 a year as a school psychologist. Father has testified that his income is approximately $30,000.00, give or take. He has income, some income from speaking, some income from magic shows. There was no testimony about any amounts of that income. He has the discretion to pay himself a salary from the camp. He's testified that he has -- he is the principal owner of Presto, LLC, which receives as its principal source of income $90,000.00 a year from the camp. There's a $36,000.00 mortgage. But there's no specification of how the remaining funds are spent, other than in general terms, maintenance, utilities, and so forth, upkeep of the camp.

But considering all that, considering the fact that he has a master's of business administration and a law degree from the University of Tennessee, and as he testified to, he was very successful in his MBA program, has taught at the University of Tennessee, the Court finds that he is substantially under-employed below his qualifications and earning potential. His earning potential at a minimum, absolute minimum is equivalent to the mother's. So I would find that he is woefully under-employed and voluntarily -- and it's commendable, the camp, the purpose of it is all well and good, but that's a choice and not commensurate with his earning ability. So I must find his earning ability is equivalent to Ms. Armbrister's for computation purposes.

* * *

The Court previously found through previous orders that the mother shall pay attorney fees to the father for the actions to enforce the discovery and finds that that amount of attorney fees she is ordered to pay $5,349.00. Father is ordered to reimburse the mother one-half the cost of Dr. Adlin's fees of $6,875.00. So there's some offset there. But the mother must pay the difference. There are other minor items mentioned that the Court, based upon each having their own assets and resources, would find that each would bear their own expenses for their attorneys and one-half the court costs.

* * *

Thus, the court imputed income to Father at $66,000 per year, or $5,500 per month gross -- the same amount as Mother earns. The trial court ordered that each side pay their own attorney fees and failed to address the issue of fees and costs in relation to the order of protection. Father timely filed this appeal.

-4-

## II. ISSUES

On appeal, Father asserts that the trial court's findings concerning voluntarily underemployment and income for Father are contrary to statutory and case law. Mother contends that the trial court erred in failing to award her attorney fees and costs for the order of protection.

## III. STANDARD OF REVIEW

We review the record de novo with a presumption that the court's factual findings are correct, absent a showing that the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d 714, 732 (Tenn. 2005). The standard of review in the trial court's application of law is conducted "under a pure de novo standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

## IV. DISCUSSION

### A.

Father argues that the trial court erred in imputing income to him in the amount of $66,000 per year. According to Father, he left his employment at the University of Tennessee many years prior to the parties' separation with no intent to decrease his income for child support purposes. He related that it had been his life's goal to own a performing arts summer camp and to use the camp facilities for corporate retreats and leadership training during the fall and spring seasons. Father asserts that the business is still in the infancy stages and that he hopes to soon be making much more than he did at his prior employment. He argues that no evidence was presented that his choice of employment was made in bad faith.

As we noted in *Dilley v. Dilley*, No. M2009-02585-COA-R3-CV, 2011 WL 2015395 (Tenn. Ct. App. May 23, 2011),

> Awards of child support are governed by the Child Support Guidelines promulgated by the Tennessee Department of Human Services Child Support Services Division. *See generally* Tenn. Comp. R. & Regs. 1240-2-4; Tenn. Code Ann. § 36-5-101(e)(2). Child support decisions may require the trial court to use its discretion in determining a parent's income for purposes of

-5-

applying the guidelines, especially in cases where the court finds a parent is underemployed and credibility issues arise. Therefore, appellate courts review the trial court's child support decisions using the deferential abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) (citing *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000) and *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999)). We will not reverse the trial court's decision unless we determine it is clearly unreasonable based on the facts of the case and the applicable law. *Richardson*, 189 S.W.3d at 725.

*Dilley*, 2011 WL 2015395, at * 6.

In *Miller v. Welch*, 340 S.W.3d 708 (Tenn. Ct. App. 2010), we quoted as follows from *Pace v. Pace*, No. M2009-01037-COA-R3-CV, 2010 WL 1687740, at *8 (Tenn. Ct. App. Apr. 26, 2010)(footnote omitted):

The Guidelines state that imputing additional gross income to a parent is appropriate if it is determined that he or she is "willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(i)(1). "This is based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity." *Massey v. Casals* [315 S.W.3d 788, 795], No. W2008-01807-COA-R3-JV, 2009 WL 4017256, at *6 (Tenn. Ct. App. Nov. 23, 2009). . . . "The Guidelines do not presume that any parent is willfully and/or voluntarily under or unemployed." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii). "The purpose of the determination is to ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children." *Id.*

"A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that adversely affects a parent's income." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii)(I). However, "[i]f a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully and voluntarily underemployed." *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777, at *4, n. 7 (Tenn. Ct. App. July 31, 2008). Although it is not required that parents intend to avoid their child support obligations by their actions, "willful or

voluntary unemployment or underemployment must result from an intent on the part of the parent to reduce or terminate his or her income." *Wilson v. Wilson*, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000). The child support guidelines provide the trial court with several factors it may consider in making this determination. "'Determining whether a parent is willfully and voluntarily underemployed and what a parent's potential income would be are questions of fact that require careful consideration of all the attendant circumstances.'" *Reed v. Steadham*, No. E2009-00018-COA-R3-CV, 2009 WL 3295123, at *2 (Tenn. Ct. App. Oct. 14, 2009) (quoting *Owensby [v. Davis,* No. M2007-01262-COA-R3-JV], 2008 WL 3069777, at *4 [Tenn. Ct. App. July 31, 2008)]). The trial court has considerable discretion in its determination of whether a parent is willfully or voluntarily underemployed. *Hommerding v. Hommerding*, No. M2008-00672-CO-R3-CV, 2009 WL 1684681, at *7 (Tenn. Ct. App. June 15, 2009) (citing *Eldridge v. Eldridge*, 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002)); *see also Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001). A trial court's determination regarding willful and voluntary underemployment is entitled to a presumption of correctness, *Johnson v. Johnson*, No. M2008-00236-COA-R3-CV, 2009 WL 890893, at *7 (Tenn. Ct. App. April 2, 2009), and "we accord substantial deference to the trial court's decision, especially when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses." *Reed*, 2009 WL 3295123, at *2.

*Miller*, 340 S.W.3d at 713. The *Dilley* opinion further notes that

> The Child Support Guidelines provide that to determine whether a parent is voluntarily underemployed, a court can consider the parent's education, training, and ability to work, as well as his past and present employment. Tenn. Comp. R & Regs. 1240-2-4-.04(3)(a)2.(iii). A court finding an obligor parent willfully and voluntarily underemployed must make a finding as to the parent's potential earnings, taking into consideration the obligor's educational level and/or previous work experience. *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Herrera v. Herrera*, 944 S.W.2d 379, 387 (Tenn. Ct. App. 1996); *Eatherly v. Eatherly*, No. M2000-00886-COA-R3-CV, 2001 WL 468665, at *11 (Tenn. Ct. App. May 4, 2001).

> Courts are directed to allocate additional income to an underemployed parent to increase the parent's gross income to an amount that reflects the parent's income potential or earning capacity, and the increased amount is to be used for child support calculation purposes. Tenn. Comp. R. & Regs. 1240-2-4-

.04(3)(a)2.(ii). The additional income allocated can be based on the parent's past employment. *Id.* The court has the option of imputing additional gross income to an underemployed parent where there is no reliable evidence of income. *Id.* at 1240-2-4-.04(3)(a)2.(i).

*Id.* at *7-8.

In *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 Tenn. App. LEXIS 456 (Tenn. Ct. App. July 31, 2008), we observed:

Under Tennessee law, there is no presumption that a parent is willfully or voluntarily underemployed or unemployed. To the contrary, the party alleging that a parent is willfully or voluntarily underemployed or unemployed carries the burden of proof. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii) (2008) ("The Guidelines do not presume that any parent is willfully and/or voluntarily under or unemployed."); *Richardson v. Spanos*, 189 S.W.3d 720, 727 (Tenn. Ct. App. 2005). Consequently, Mother had the burden of demonstrating that Father was willfully or voluntarily underemployed. . . .

*Id.* at *11-12. The *Owensby* court continued

A party's child support obligation is not measured by his actual income; it is measured by his earning capacity as evidenced by his educational level and previous work experience. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii); *Watters v. Watters*, 22 S.W.3d 817, 820-21 (Tenn. Ct. App. 1999). When called upon to determine whether a parent is willfully and voluntarily unemployed or underemployed, the courts will consider the factors in Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii), as well as the person's past and present employment and reasons for the party's change in employment.

*Id.* at *12 (some citations omitted).

Upon review of the record, we find that the trial court properly concluded that Father was underemployed. Regardless of any merit that can be discerned from Father's work as the owner and operator of a camp, this voluntary underemployment will not shield him from his child support obligations. The record clearly supports that Father could have obtained supplemental employment as a university instructor.

Once it is determined that Father was voluntarily underemployed, the next matter for the trial court to address is the proper amount of income to impute. "[A]dditional income can

be allocated to that parent to increase the parent's gross income to an amount which reflects the parent's income potential or earning capacity, and the increased amount shall be used for child support calculation purposes." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii)(II). Father argues that there was no evidence of income presented in this case, other than oral testimony of the parties and their proposed Plans. He notes that Mother failed to provide any documentary evidence or expert testimony as to what an individual with a similar education and work history as Father could expect to earn. He contends that the trial court arbitrarily set his income at $66,000 per year. According to Father, if the trial court rejected that his income was $2500 per month, absent proof of his actual income or potential income, the most the court could impute to him was $37,589 per year pursuant to the guidelines.

Father relies on Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iv), which provides as follows:

(iv) Imputing Income When There is No Reliable Evidence of Income.

(I) When Establishing an Initial Order.

I. If a parent fails to produce reliable evidence of income (such as tax returns for prior years, check stubs, or other information for determining current ability to support or ability to support in prior years for calculating retroactive support); and

II. The tribunal has no reliable evidence of the parent's income or income potential;

III. Then, in such cases, gross income for the current and prior years shall be determined by imputing annual gross income of thirty-seven thousand five hundred eight[y]-nine dollars ($37,589) for male parents and twenty-nine thousand three hundred dollars ($29,300) for female parents. These figures represent the full time, year round workers' median gross income, for the Tennessee population only, from the American Community Survey of 2006 from the U.S. Census Bureau.

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iv).

The parties agreed that Father earned at least $2500 per month ($30,000 per year). On direct examination, Father claimed monthly income of $2,750 per month. He further

testified that he could have worked as a part-time professor making approximately $30,000 per year. Additionally, he noted that he derived income from speaking engagements and magic shows. We find, therefore, that despite the fact the trial court cited Mother's income as a benchmark, "[t]he tribunal ha[d] . . . reliable evidence of the parent's . . . income potential[.]" *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iv)(II). The court therefore articulated a reasonable amount of income for Father for child support purposes.

## B.

Mother filed a petition for an order of protection against Father on April 22, 2009. Thereafter, an ex parte order of protection issued, and the parties agreed to consolidate the order of protection with their pending divorce. At the final hearing, the trial court extended the order of protection. However, the court did not award attorney fees to Mother on this issue, even though her attorney asked for fees during his closing argument. Father asserts that she has raised this issue for the first time in her brief.

Tenn. Code Ann. § 36-3-617(a) states, in part, "[i]f the court, after the hearing on the petition, issues or ***extends an order of protection, all court costs, filing fees, litigation taxes and attorney fees shall be assessed against the respondent***." (Emphasis added). The mandatory language of the statute does not allow the trial court any discretion in the matter, and expressly requires such payment. *See Furlong v. Furlong*, No. E2010-02456-COA-R3-CV, 2011 WL 4864344, at *11 (Tenn. Ct. App. Oct. 14, 2011); *Lewis v. Rader,* No. E2010-00724-COA-R3-CV, 2010 Tenn. App. LEXIS, at *6 (Tenn. Ct. App. Sept. 30, 2010). Thus, the trial court erred in failing to award to Mother attorney fees and costs associated with the order of protection.

## V. CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part. This matter is remanded to award Mother attorney's fees and costs for the extension of the order of protection and with costs of the appeal assessed against the appellant, Edwin C. Armbrister, Jr.

_____
JOHN W. McCLARTY, JUDGE