IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 29, 2010

## ROGER A. MILLER v. KIMBERLY SUMMERS WELCH

**Appeal from the Juvenile Court for Anderson County**
**No. J-22497     April Meldrum, Judge**

_____

**No. E2009-01942-COA-R3-CV - FILED OCTOBER 12, 2010**

_____

Kimberly Summers Welch ("Mother") gave birth to Aaron A. (the "Child") on July 14, 2004. Prior to the birth, Roger A. Miller ("Father") filed a petition seeking to establish paternity. After the Child was born and a DNA test established that Father was the biological father, Father was ordered to pay $235 per month in child support. This amount was specifically held not to be presumptively correct and Mother was allowed additional time to pursue her claim that Father's income was such that he should pay more child support. The Trial Court eventually found that Father was capable of earning or presently was earning $40,000 annually. Father also was ordered to pay 10% of Mother's attorney fees. Father appeals both determinations. Mother requests an award of attorney fees incurred on appeal. We affirm the judgment of the Trial Court and award Mother her attorney fees incurred in this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Juvenile Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Roger A. Miller, Esq., pro se Appellant.

Shelley S. Breeding and David L. Dothard, Knoxville, Tennessee, for the Appellee, Kimberly Summers Welch.

# OPINION

## Background

The record in this case begins with a petition to establish paternity filed by Father in June 2004. At that time, the Child had not yet been born, and Father requested a DNA test upon the Child's birth. Mother filed a counter-petition also seeking to establish Father's paternity. The Child was born on July 14, 2004, and a DNA test performed shortly thereafter established that Father was the Child's biological father. Father's initial child support payment was set at $235 per month "without a presumption of correctness until the Mother is able to further investigate her claims that support should be more." Father also was ordered to obtain health insurance on the Child.

The relationship between the parties had been contentious with many motions and petitions being filed after Father's paternity was established. At issue in this appeal is the amount of Father's income for purposes of calculating his child support payment, as well as an order that Father pay a small portion of Mother's attorney fees. The only issue raised by Mother on this appeal is her request for an award of attorney fees incurred on appeal.

A hearing regarding the amount of Father's child support payment and various other issues was conducted in August 2007 and in February 2008. Only two people testified at these hearings, and the majority of the three transcripts is composed of counsel arguing various points.

The first witness was Vicki Monroe ("Monroe"), a family services worker employed by the juvenile court who was assigned originally to this case. According to Monroe, at a previous hearing, the Juvenile Court Judge ordered both parents to undergo drug testing. Monroe testified to the procedure used by the juvenile court personnel to obtain urine samples for drug testing. Both parties were tested for various drugs. Monroe testified that Father's drug test was negative. Monroe was not permitted to testify about Mother's test results because the Trial Court deemed that testimony irrelevant since Mother admitted that she had smoked marijuana and that her drug test, therefore, was positive. Although not directly at issue on appeal, Mother originally submitted an altered urine sample in an attempt to avoid a positive drug test and was held in contempt of court for this action.

Father testified that he has been a licensed attorney since 1999. He is a solo practitioner in Clinton, Tennessee. Father practices family law and criminal law, "[j]ust a little bit of everything." Father testified that in 2005 his gross income was $54,248 and his net income was $18,439. In 2004, his gross income was $48,421 and his net income was $17,979. Father testified at the hearing that he did not yet know the amount of his income

for 2006. Father stated that he represents clients as a court appointed attorney in Anderson County and also had done appointed work in Campbell and Roane counties. Father acknowledged buying a Mercedes in 2002 for $32,000.[1] At the February 2008 hearing, Father testified that the rent for his law office was $600 a month, that he has a Ford Explorer on which he pays $569 a month, and the rent for his residence is $700 a month. When the Trial Court noted that these expenses alone exceeded his reported net income and when asked to explain why, Father stated that "is probably why he has a tax lien." Father testified that he was current on his monthly child support payment of $235. After Father testified to his various expenses, the Trial Court stated:

> When I'm looking at your office rent, your car payment, your house payment, those are three things you're making or you'd be kicked out or walking. I figured in two hundred dollars ($200.00) a month on food, and I mean I am being really minimal in my estimations here. . . . A hundred dollars a month in gas . . . . A hundred fifty dollars ($150.00) a month insurance. I'm assuming malpractice and car insurance . . . [and business] insurance . . . .
>
> MR. MILLER: [The Father] does provide health insurance for his child.
>
> THE COURT: Right. I was just being really low in my estimation of one hundred fifty dollars ($150.00) for whatever kind of insurance you might have. I didn't consider your school loans as you're not paying those. Two hundred thirty-five dollars ($235.00) a month in child support and I figured a hundred dollars ($100.00) for all utilities. That'd be your phone, your cell phone, your electric, your water, your sewage, which again I'm figuring real low. When I come up with all those numbers, we're pushing three thousand dollars ($3,000.00) a month in bills. . . . [T]hat's about twenty-five thousand

---

[1] The hearings were tape recorded and later transcribed from the tape recordings. This procedure resulted in the transcripts not being as helpful as they could have been because portions of the tape recordings were inaudible. For example, when Father was purchasing the Mercedes, he filled out a form that asked his level of income. During the hearing, Father was asked by Mother's attorney if he stated on the loan documents that his annual income was $60,000. The answer to this question likely was "yes" and would certainly be relevant in this appeal where the primary issue is Father's level of income. The transcript, however, indicates that Father's response was inaudible. We cannot assume that Father's answer was "yes," even though it likely was or Mother's attorney would not have asked the question.

($25,000.00) more a year in recurring expenses, and that's with me being as minimalistic as I can on this subject. So, there's no way what you're showing in your income is accurate. It is not accurate. . . .

I'm simply saying that the amount of your income is not flushing with the amount of your expenses. I believe that you do have and have had, since the birth of this child, the ability to make a minimum of forty thousand ($40,000.00) a year income . . . .

In light of the foregoing, the Trial Court entered an order which revised the initial determination of the amount of Father's child support payment and recalculated that amount based on an imputed income to Father of $40,000 per year. Father was given credit for the $235 monthly payments that he had been making since the child was born. Father was ordered to make current child support payments based upon an annual income of $40,000. He also was ordered to pay back child support for the time he was making payments of only $235 but should have been paying more in child support based on an annual income of $40,000. Father was ordered to make these additional payments in an amount that would have the past due child support payments paid off in three years. As to Mother's request for attorney fees, the Trial Court awarded Mother 10% of the attorney fees she had incurred to date, which award amounted to $990.

Father appeals raising several issues. Father claims the Trial Court erred when it imputed income to him of $40,000 per year. Next, Father claims the Trial Court erred in the amount of back child support it ordered him to pay. Finally, Father claims that he should have been awarded attorney fees because he was the primary prevailing party throughout this litigation. Mother asks this Court to affirm the Trial Court's ruling in all respects, and requests that she be awarded her attorney fees incurred on appeal.

### Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

This Court recently discussed in depth the legal concept of imputing income to a parent for purposes of calculating child support payments in *Pace v. Pace*, No. M2009-01037-COA-R3-CV, 2010 WL 1687740 (Tenn. Ct. App. Apr. 26, 2010), *no appl. perm. appeal filed*. We stated:

> The Guidelines state that imputing additional gross income to a parent is appropriate if it is determined that he or she is "willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(i)(I). "This is based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity." *Massey v. Casals*, No. W2008-01807-COA-R3-JV, 2009 WL 4017256, at *6 (Tenn. Ct. App. Nov. 23, 2009). Therefore, a trial court may deny a petition for modification of child support if the significant variance is the result of willful or voluntary underemployment. *Wine*, 245 S.W.3d at 394. "The burden of proving that a significant variance is the result of willful or voluntary underemployment is on the party opposing the modification." *Id.* (citing *Demers v. Demers*, 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003)) "The Guidelines do not presume that any parent is willfully and/or voluntarily under or unemployed." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii). "The purpose of the determination is to ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children." *Id.*

> "A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that adversely affects a parent's income." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii)(I) (emphasis added). However, "[i]f a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully and voluntarily underemployed." *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777, at *4, n.7 (Tenn. Ct. App. July 31,

2008). Although it is not required that parents intend to avoid their child support obligations by their actions, "willful or voluntary unemployment or underemployment must result from an intent on the part of the parent to reduce or terminate his or her income." *Wilson v. Wilson*, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000). The child support guidelines provide the trial court with several factors it may consider in making this determination. "'Determining whether a parent is willfully and voluntarily underemployed and what a parent's potential income would be are questions of fact that require careful consideration of all the attendant circumstances.'" *Reed v. Steadham*, No. E2009-00018-COA-R3-CV, 2009 WL 3295123, at *2 (Tenn. Ct. App. Oct. 14, 2009) (quoting *Owensby*, 2008 WL 3069777, at *4). The trial court has considerable discretion in its determination of whether a parent is willfully or voluntarily underemployed. *Hommerding v. Hommerding*, No. M2008-00672-COA-R3-CV, 2009 WL 1684681, at *7 (Tenn. Ct. App. June 15, 2009) (citing *Eldridge v. Eldridge*, 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002)); *see also Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001). A trial court's determination regarding willful and voluntary underemployment is entitled to a presumption of correctness, *Johnson v. Johnson*, No. M2008-00236-COA-R3-CV, 2009 WL 890893, at *7 (Tenn. Ct. App. April 2, 2009), and "we accord substantial deference to the trial court's decision, especially when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses." *Reed*, 2009 WL 3295123, at *2.

*Pace*, 2010 WL 1687740, at *8 (footnote omitted).

The Trial Court's finding that Father's income was $40,000 per year was based primarily on the fact that his expenses showed his income is greater than he testified to at trial. This was a factual determination made by the Trial Court. If Father's net income was as low as he claimed, he simply could not be paying the expenses that he was incurring. Accordingly, the evidence does not preponderate against the Trial Court's finding that Father either was capable of making or actually was making $40,000 per year.

Father's second issue is his claim that the back child support he was ordered to pay is too much per month and actually exceeds the amount of his regular support payment. The Trial Court found that the amount of back child support owed by Father dating

back to when the Child was born and utilizing an annual income of $40,000 in the child support calculation was $14,291. This amount took into account the $235 monthly payments already made by Father. Father was ordered to pay this outstanding balance at the rate of $400 per month for a period of three years. This was in addition to his new regular monthly child support payment of $313.

Tenn. Comp. R. & Regs. Rule 1240-2-4-.06(4) provides that:

(4) A periodic payment amount shall be included in the support order, in addition to any prospective amount of current support, to eliminate the retroactive judgment for support *within a reasonable time*. Payment of the monthly amount as ordered shall be considered compliance with the retroactive order, however, the department may use additional means of collection to reduce this judgment without regard to the timeliness of the periodic payment. (emphasis added)

We find that requiring Father to pay the back amount of support owed at the rate of $400 per month for a total of three years is reasonable under the circumstances of this case, keeping in mind that we have affirmed the Trial Court's determination that Father's child support should be based on an income of $40,000 per year. We will not get into a semantical argument as to whether the $14,291 is an "arrearage" Father owes, or whether it is current child support dating back to the birth of the child which is owed because the original calculation was too low. Regardless of how the amount owed is characterized, it is still owed and requiring Father to pay the amount owed over a three year period is reasonable in this case.

Before we address the attorney fees issues, we feel constrained to address the following provisions of the Child Support Guidelines:

(iv) Imputing Income When There is No Reliable Evidence of Income.

(I) When Establishing an Initial Order.

I.    If a parent fails to produce reliable evidence of income (such as tax returns for prior years, check stubs, or other information for determining current ability to support or ability to support in

-7-

prior years for calculating retroactive support); and

II.     The tribunal has no reliable evidence of the parent's income or income potential;

III.    Then, in such cases, gross income for the current and prior years shall be determined by imputing annual gross income of thirty-seven thousand five hundred eight-nine dollars ($37,589) for male parents and twenty-nine thousand three hundred dollars ($29,300) for female parents. These figures represent the full time, year round workers' median gross income, for the Tennessee population only, from the American Community Survey of 2006 from the U.S. Census Bureau.

Tenn. Comp. R. & Regs. Rule 1240-2-4-.04(3)(a)(2)(iv) (2008).

In the present case, the Trial Court found that the evidence provided by Father as to his income was not accurate. The evidence does not preponderate against this finding. If Father's evidence as to his income is not accurate, then it is not reliable. As such, a minimum amount of income would have to have been imputed to Father in this case anyway, and that amount is $37,589, which is only $2,411 less per year than what the Trial Court found to be his annual income.

The next issue is Father's claim that he should have been awarded his attorney fees and the Trial Court erred when it awarded Mother 10% of her attorney fees. Mother requests this Court affirm the Trial Court's judgment on this issue and award her attorney fees incurred on appeal. Tenn. Code Ann. § 36-5-103(c) provides as follows:

The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which

fees may be fixed and allowed by the court, before whom such
action or proceeding is pending, in the discretion of such court.

Both parties agree that Tenn. Code Ann. § 36-5-103(c) is applicable to resolving this issue
and that attorney fee awards by the plain language of the statute are discretionary.

As this litigation progressed, Father requested that he be designated the primary
residential parent, but that request was denied. Father requested Mother be held in contempt
of court, and that request was granted. The point being, both parties enjoyed some success.
Father claims he should be awarded attorney fees because he was "more successful" than
Mother and should be deemed the prevailing party. Given that Mother was designated the
primary residential parent and ultimately was awarded a judgment against Father of $14,291
and the amount of Father's child support payment was increased, we will not deem Father
to be the "prevailing party," even assuming that is a relevant consideration.

The issue before us is whether the Trial Court abused its discretion when it
refused to award Father his attorney fees, but instead awarded Mother 10% of her attorney
fees. In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court
discussed the abuse of discretion standard stating:

> The abuse of discretion standard of review envisions a
> less rigorous review of the lower court's decision and a
> decreased likelihood that the decision will be reversed on
> appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838,
> 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189,
> 193 (Tenn. Ct. App. 2000). It reflects an awareness that the
> decision being reviewed involved a choice among several
> acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d
> 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit
> reviewing courts to second-guess the court below, *White v.
> Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or
> to substitute their discretion for the lower court's, *Henry v.
> Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins.
> Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of
> discretion standard of review does not, however, immunize a
> lower court's decision from any meaningful appellate scrutiny.
> *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct.
> App. 2002). . . . A court abuses its discretion when it causes an
> injustice to the party challenging the decision by (1) applying an
> incorrect legal standard, (2) reaching an illogical or

unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. . . .

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25 (citations omitted in part).

We conclude that the Trial Court's award as to attorney fees was factually supported by the evidence in the record, the Trial Court properly identified and applied the most appropriate legal principles to its decision, and that the decision was within the range of acceptable alternative dispositions. The judgment as to attorney fees is, therefore, affirmed.

The final issue is Mother's request for attorney fees incurred on appeal. Given that Mother was successful in defending all of the issues raised by Father and that she already has to pay most of her attorney fees incurred below, exercising our discretion, we believe it is appropriate to award Mother her attorney fees incurred in this appeal. This case is remanded to the Trial Court for a determination of Mother's reasonable attorney fees incurred on appeal and for collection of the costs below.

## **Conclusion**

The judgment of the Trial Court is affirmed and this cause is remanded to the Juvenile Court for Anderson County for a determination of Mother's reasonable attorney fees incurred on appeal and for collection of the costs below. Costs on appeal are taxed to the Appellant, Roger A. Miller, and his surety, if any, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE