FILED

12/20/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 12, 2017 Session

## IN RE AVA B.

**Appeal from the Juvenile Court for Knox County**
**No. 112997   Timothy E. Irwin, Judge**

_____

### No. E2017-00440-COA-R3-JV

_____

The parents in this action challenge inter alia, the juvenile court's decisions regarding calculation of the parents' income for child support purposes and the modification of the final co-parenting order.  Because the evidence does not preponderate against the trial court's findings, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

C. Scott Taylor and Margo J. Maxwell, Knoxville, Tennessee, for the appellant, Warren B.

Ben H. Houston, II, Knoxville, Tennessee, for the appellee, Susan M.

## OPINION

## I. BACKGROUND

The parties in this action never married.  Susan M. ("Mother")[1] worked as a

_____

[1]Mother moves this court to consider post-judgment facts pursuant to Rule 14 of the Tennessee Rules of Appellate Procedure regarding the birth of an additional child.  Pursuant to Rule 22 of the same Rules, Mother also moves the court to take judicial notice of a map printout of her previous work commute.  Father has responded in opposition.  As is within our discretion, we will allow the information, which is not genuinely disputed and is capable of ready determination, for purposes of clarifying and keeping the record up to date.  *Duncan v. Duncan*,

mechanical engineer for the Tennessee Valley Authority ("TVA"). Warren B. ("Father") worked as an engineer for Southeastern Power Administration. Ava ("the Child") was born on May 28, 2007. At the time of the Child's birth, the parties resided together in Chattanooga, Tennessee; they remained together until early 2009, at which time the parties separated. After the separation, Mother moved twice, married twice, and had two more children.

The parties coparented by agreement without the benefit of a court order until April 2013, when Mother sought to obtain a passport for the Child in order that her daughter could accompany her on a vacation trip to Germany. Upon Father's refusal to cooperate regarding the passport, Mother filed a petition seeking sole custody of the Child. Father responded by filing a petition to establish paternity. In May 2013, an order was entered by the juvenile court verifying the transfer of residential custody to Mother. Two months later, in July 2013, a paternity order was entered by the juvenile court's magistrate. The issue of coparenting was reserved for a future hearing. Child support calculation was referred to a magistrate.

According to Father, in August 2013, Mother refused to participate in further transportation and informed Father that he would have to drive from Georgia to pick up and return the Child. During a hearing, Father claimed that this situation continued until December 2013, and his exercise of visitation required a nine-hour roundtrip.

In early 2014, prior to her trip to Germany with the Child, Mother, then 46, left her employment with TVA. After a hearing in April 2014, the juvenile court entered a final order on August 11, 2014, naming Mother as the primary residential parent and setting forth a visitation schedule for Father. The order specifically recognized Father's plan to "move to Kingsport[,] Tennessee where the Mother resides." The order addressed coparenting issues, providing that "[i]f and when [Father] in fact does move to the Kingsport[,] Tennessee area, the coparenting shall be . . . on an eight day/four-day rotation with the [c]hild. . . ." On August 27, 2015, the magistrate entered his findings and recommendations addressing the setting of child support, medical support, retroactive support issues, and the termination of a 15% variance modification.

**Vacation Motion**

The 2014 order provided that the parties could alter the coparenting schedule by agreement. Mother did in fact allow Father to have additional unscheduled visitation by agreement. However, less than a year after the April 2014 hearing, Father filed a "Motion for Vacation Time," seeking to modify the August 2014 order by granting Father half of the summer vacation and every other spring and fall vacation. The bases stated for this motion were Father's retirement and his move to Kingsport, which

672 S.W.2d 765, 767 (Tenn. 1984). Accordingly, we find it appropriate to GRANT the motions.

occurred in March 2015. Father argued that the earlier order made "no mention about spring, fall and summer vacations" and failed to provide him with any length of time greater than four consecutive days with the Child. He asserted that he would be unable to extensively travel with the Child if the order was not modified. In response, Mother contended that the 2014 order awarded Father time in excess of four consecutive days during the Christmas/winter vacation period. Mother further noted that she was willing to work with Father to allow an extended trip; Father acknowledged that Mother had worked with him to permit unscheduled visitation.

A hearing was held on June 10, 2015, regarding Father's vacation motion. After hearing argument, the juvenile court observed that material changes had occurred: "Relocation of the father to Kingsport, moving within four miles of the mother's house, the retirement of the father, all of those are changes." The court further noted that "the parties haven't shown th[e] ability to get along since they left the court" pursuant to the prior order, and that "there's a little more work [that] needs to be done by the court." Accordingly, as to coparenting time, the court modified the earlier order as follows:

> 18-day shifts for the summer, two of them. Real simple, folks, first 18 days to be enjoyed by the mother, second 18 days enjoyed by the father, third 18 days to be enjoyed by the mother, fourth 18 days to be enjoyed by the father. The remainder shall be the start of the eight and four.
>
> * * *
>
> Eighteen, 18, 18, 18, you can go somewhere pretty far in 18 days. . . .
>
> . . . I think 18, 18, 18 and 18 is better than half and half because at least the child will be being reunited with her mother and her siblings more often. . . .

In its decision from the bench, the juvenile court did not specifically provide that the change from the prior order addressing coparenting time was in the best interest of the Child.

On April 12, 2016, the juvenile court conducted a hearing on the parties' appeal of the magistrate's findings and recommendations regarding child support. At the hearing, the court observed that it did not "want the mother to be able to retire and live off the [C]hild's support, I don't think that's equitable, never have thought that was an equitable way to go. Mother's retirement is not very much. But . . . don't think she should be penalized for retiring if father gets to retire." The court entered a child support order declining Father's request to find that Mother was willfully or voluntarily unemployed. The court reasoned that since Father was retired at age 65, there was no reason that

Mother also should not "retire" and not be gainfully employed at 46.

## Unemployed/Underemployed

Mother's gross income history is as follows: $94,962.93 in 2009; $92,738.05 in 2010; $90,490 in 2011; $99,333.30 in 2012; $95,831.30 in 2013; $53,813.30 in 2014; and $11,892 in 2015. Her gross income declined sharply from $53,813.30 in 2014 to $11,892 in 2015 after she accepted a voluntary reduction in force offer ("RIF") from TVA.

Prior to Mother's retirement from TVA, she was commuting from the Kingsport area to Knoxville every day. She asserts that the commute to Knoxville was not sustainable over the long term. Upon accepting the voluntary RIF offer, Mother became a stay-at-home mother. The record does not reveal any evidence that Mother has attempted to secure a comparable position in the Kingsport area.

The juvenile court did not make a specific finding regarding whether Mother was willfully and voluntarily unemployed and declined Father's request that Mother's income be imputed at a rate above her actual income of $11,892 for child support purposes. In the view of the court, the instant case was unusual in that both parents have the availability to spend time with the Child without the normal restraints posed by a work schedule.

## Capital Losses

The juvenile court also determined that Father was not permitted to carry forward capital losses that occurred during the years 2007, 2008, and 2009 for the purposes of calculating his gross income in subsequent years for child support purposes. Father suffered a large capital loss of $1.4 million in the years 2007 to 2009. In calculating his child support obligation, Father's gross income **without** the capital loss carryover was $122,184 in 2009; $144,097 in 2010; $120,456 in 2011; $133,710 in 2012; $179,345 in 2013; and $186,026 in 2014. If the capital loss carryover is permitted, Father's adjusted gross income for child support purposes was $143,379 in 2013; and $131,549 in 2014. The juvenile court determined that Father's income for purposes of calculating child support in 2015 was $83,405, which included Social Security income in the amount of $19,328 imputed to him because he was eligible to draw this amount at the time of the child support hearing.[2] No capital loss carry forward issue arose in 2015 because Father had no capital gains to offset in that particular year.

Both parties filed timely appeals. Father moved that this matter be transferred to the Sullivan County Juvenile Court. The transfer request has been stayed pending appeal.

---

[2]Father contends that he reasonably chose not to receive social security income until he could draw the full amount at age 66.

- 4 -

## II. ISSUES

Father raises the following issues:

1. Did the juvenile court err in failing to find that Mother is willfully and voluntarily unemployed when she left her last employment at age 46 and in declining to impute any income to Mother?

2. Did the juvenile court err in not permitting Father to carry forward his capital loss for the purposes of calculating his gross income under the child support guidelines?

Mother poses two additional issues:

3. Did the juvenile court err by granting Father's vacation motion?

4. Should this court award Mother her attorney's fee on appeal pursuant to Tennessee Code Annotated section 36-5-103(c)?

## III. STANDARD OF REVIEW

Findings of fact by a trial court in a civil action are "de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Conclusions of law by a trial court are subject to de novo review with no presumption of correctness. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *Ganzevort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Trial courts have discretion to determine the amount of child support within the confines of the Tennessee Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 192 (Tenn. 2000); *Hommerding v. Hommerding*, No. M2008-00672-COA-R3-CV, 2009 WL 1684681, at *3 (Tenn. Ct. App. June 15, 2009). In reviewing a child support award, the appellate court considers: (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court properly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). We will not substitute our decision for that of the trial court simply because we would have chosen a different alternative. *Tait v. Tait*, 207 S.W.3d 270, 275 (Tenn. Ct. App. 2006). "A trial court will be found to have 'abused its discretion' when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App.

2005).

## IV. DISCUSSION

### A. Voluntarily and Willfully Unemployed

"The fairness of a child support award depends on an accurate determination of both parents' gross income." *Massey v.* Casals, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009). Under the Guidelines, "[i]mputing income to a parent is only appropriate after 'a tribunal' determines that the parent is willfully and/or voluntarily underemployed." *Goodman v. Goodman*, No. W2011-01971-COA-R3-CV, 2012 WL 1605164, at \*5 (Tenn. Ct. App. May 7, 2012) (citing Tenn. Comp. R. & Regs. 1240-2-4-.03(a)(2)(i)). To trigger this portion of the Guidelines and "[t]o calculate a child support award based on earning capacity rather than actual net income, there must be a threshold finding that the obligor parent is willfully and voluntarily underemployed or unemployed." *Id.* (citing *Marcus v. Marcus*, No. 02A01-9611-CV-CV-00286, 1998 WL 29645, at \*3 (Tenn. Ct. App. Jan. 28, 1998), *see Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996).

Father argues that Mother is voluntarily and willfully unemployed. He contends that it was reasonable for him to retire at 65 so that he could spend more time with the Child, but it was unreasonable for Mother to retire at age 46 by accepting the voluntary RIF offer from her employer. Citing Census Bureau data showing that the average age of retirement is 63, Father argues that Mother's "retirement" at age 46 is not the norm in this state or in the United States. He also notes that Mother's pension is substantially less than his. Father additionally observes that Mother worked at full time employment as an engineer for TVA while the Child was an infant and preschooler and until the Child was almost 7 years old. According to Father, Mother's decision to now voluntarily quit her employment when the Child is in school full-time does not benefit the daughter and deprives her of child support income from her Mother. According to Father, Mother's desire to stay home with all her children is immaterial to the issue of whether she is voluntarily unemployed.

The determination of whether a parent is willfully and voluntarily underemployed or unemployed is based upon consideration of the factors set forth in Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(d)(2) as well as reasons for the party's change in employment. *Demers v. Demers*, 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003). The courts are particularly interested in whether a parent's change in employment is voluntary or involuntary and are more inclined to find willful and voluntary unemployment when a decision to accept a lower paying job is voluntary. *Id.* In *State ex rel. Ledbetter v. Godsey*, No. M1998-00958-COA-R3-CV, 2000 WL 798641 (Tenn. Ct. App. June 22, 2000), the court noted:

> Often, the initial inquiry . . . is whether the obligor parent
> voluntarily quit. Where a parent with child support

obligations voluntarily leaves the employment or business activity which provided the resources to maintain that support and chooses to cease working or to begin an activity which provides significantly less income, the courts are more inclined to find willful and voluntary unemployment or underemployment.

*Id.* at \*4 (internal citations omitted). In *Ledbetter*, the court further noted that

The term "willfully and voluntarily" implies a choice. . . . [A]n obligor's course of action and decision-making after termination can demonstrate willful and voluntary underemployment. The determination of whether an obligor parent is willfully and voluntarily underemployed is one which is dependent upon the complete factual background of the obligor's situation. . . . [T]he obligor parent's attempts to find employment at a comparable salary, the availability of comparable or any employment, and the reasonableness of the employment or other choice under all the circumstances, including the support obligation, should be considered.

*Id.* at \*5.

The Tennessee Child Support Guidelines do not presume that any parent is willfully or voluntarily underemployed or unemployed. Tenn. Comp. R. & Regs § 1240-02-04-.04(3)(a)(2)(ii). "The purpose of [determining whether or not a parent is voluntarily underemployed or unemployed] is to ascertain the reasons for the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the child(ren)." *Id.* "[I]f a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully or voluntarily underemployed." *Miller v. Welch*, 340 S.W.3d 708, 712 (Tenn. Ct. App. 2010) (citing *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777, at \*4, n. 7 (Tenn. Ct. App. July 31, 2008)); *see Narus v. Narus*, No. 03A01-9804-CV-00126, 1998 WL 959839, at \*2 (Tenn. App. Ct. Dec. 31, 1998). The burden of proving that a parent is willfully or voluntarily underemployed or unemployed is on the party attempting to prove willful or voluntary underemployment. *Wine v. Wine*, 245 S.W.3d 389, 394 (Tenn. Ct. App. 2007).

A trial court "has considerable discretion in its determination of whether a parent is willfully or voluntarily underemployed." *Miller v. Welch*, 340 S.W.3d 708, 712 (Tenn. Ct. App. 2010). Accordingly, a trial court's determination regarding willful and voluntary underemployment is entitled to a presumption of correctness, and this court accords "substantial deference to the trial court's decision[.]" *Id.* at 712-13. Where the

trial court does not make a specific finding of willful and voluntary underemployment, this court may review the record and determine that issue itself, with no presumption of correctness. *Ralston v. Ralston*, No. 01A01-9804-CV-00222, 1999 WL 562719, at * 7 (Tenn. Ct. App. Aug. 3, 1999).

Mother argues that her employment decision was reasonable under the facts of this case. According to Mother, she has opted to become a stay at home mother in order to spend more time with the Child and her other children. She asserts that her occupational choices have benefitted the Child. *See* Tenn. Comp. R. & Regs § 1240-02-04-.04(3)(a)(2)(ii). Mother also contends that her decision to accept the voluntary RIF offer was reasonable based upon her lengthy commute from her residence in Kingsport to Knoxville every day. The juvenile court agreed with Mother that it was beneficial for the Child to get more attention from both of her parents than the average child gets with parents who are both working on a full time basis.

In *State ex rel. Brown v. Brown*, No. M2014-02497-COA-R3-CV, 2016 WL 506732, at *4 (Tenn. Ct. App. Feb. 8, 2016), the mother had voluntarily resigned her position with her prior employer due to the fact that a long commute of more than an hour was causing her to lose considerable quality time with her child, and as a result of this decision, she had experienced a sharp decline in her income. We rejected the father's argument that the mother was voluntarily underemployed, finding reasonable the trial court's determination that mother's decision to resign her employment from a higher paying job was motivated by "no reason other than to spend more time with her child and to be a better mother." *Id.* at *5.

The record before us does not preponderate against the juvenile court's determination that Mother's decision to accept the voluntary RIF offer was motivated by no reason other than to spend more time with the Child and to be a better mother. The State of Tennessee "recognizes the role of a stay-at-home parent as an important and valuable factor in a child's life." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(2)(iii). Mother is clearly not avoiding employment in an effort to evade an obligation to support the Child. Additionally, the lengthy drive from Kingsport to Knoxville did result in Mother spending an excessive amount of time in the car each day prior to her decision to accept the voluntary RIF offer, thus limiting the amount of time she could spend with the Child. The juvenile court's decision on this issue is in accord with both the Child Support Guidelines and relevant case law. *See* Tenn. Comp. R. & Regs § 1240-02-04-.04(3)(a)(2)(ii) ("[t]he purpose of [determining whether a parent is willfully or voluntarily underemployed] is to ascertain the reasons for the parent's occupational choices and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the child(ren)."); *see also Miller v. Welch*, 340 S.W.3d 708, 712 (Tenn. Ct. App. 2010) ("[i]f a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully or voluntarily underemployed.").

- 8 -

Accordingly, we find that the trial court did not err in declining to find that Mother is willfully and voluntarily unemployed and in rejecting Father's request to impute to Mother an income of $95,000 per year for the purposes of calculating current child support. "If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative." *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 826 (Tenn. Ct. App. 2012).

## Social Security

In a related argument, Father asserts that the juvenile court demonstrated inconsistency by declining to impute income to Mother while at the same time imputing to him unreceived Social Security income of $19,328 per year.

Under the facts of this case and the Guidelines, Father's election not to receive social security benefits is unreasonable when one considers his choice to not receive the benefits is depriving the Child of benefits to which she is entitled under the Social Security Act. Pursuant to the act, if Father would elect to receive his benefits, the Child would be entitled to receive annual benefits equal to half of Father's annual benefits. *See* 42 U.S.C. § 402(d)(1), (2). Father was entitled to receive Social Security benefits of $19,328 per year. Accordingly, the Child could receive an annual benefit of $9,664 if Father would take his benefits. *See* 42 U.S.C. § 401(d)(1), (2). Further, if Father elected to receive his benefits, he would likely see either a significant decline or elimination of his child support obligation, because pursuant to the Guidelines, he would receive a dollar for dollar credit for purposes of calculating child support. *See* Tenn. Comp. R. & Regs 1240-02-04-.04(3)(a)(1)(xiv). Accordingly, the juvenile court's decision pertaining to the imputation of Father's Social Security income for purposes of calculating child support was not an abuse of discretion.

## B. Capital Losses

Father further asserts that the juvenile court erred by not permitting him to carry forward capital losses that occurred during the years 2007, 2008, and 2009 for purposes of calculating his gross income in subsequent years under the Guidelines. Father submits that his large capital loss of approximately $1.4 million occurred after the birth of the Child, so it is appropriate to carry over the capital loss as permitted by the IRS into the calculation of adjusted gross income for each year as a form of income averaging. He contends that a carry forward of a capital loss is permitted (1) under the IRS regulations, (2) under Tennessee Code Annotated section 36-5-101(e)(1)(B) allowing the calculation of "net capital gains" under the Guidelines, and (3) pursuant to Tennessee law that "income averaging" is permitted by the Guidelines when fluctuating income of an obligor parent is at issue. Father argues that we should permit a carry forward capital loss just as

state law permits "income averaging" when an obligor parent has fluctuating income.

Mother contends that Father's proposed interpretation of Tennessee Code Annotated section 36-5-101(e)(1)(B) contravenes the plain language of the statute, which states that "[i]n determining each party's income for the purpose of applying the child support guidelines, the court shall deduct each party's capital losses from that party's capital gains in each year." Tenn. Code Ann. § 36-5-101(e)(1)(B) (emphasis added). Thus, according to Mother, Father's interpretation of the statute would render the words "in each year" meaningless and would unfairly allow parents to deduct capital losses that occurred many years ago for an indefinite period of time.

The magistrate determined that Father's carry forward capital loss should be allowed pursuant to IRS regulations. The juvenile court, however, did not adopt the magistrate's ruling, instead asserting that the court had no precedent for permitting the carryover of capital losses from prior years:

> Father's income will include everything in all years. There will not be an allowable credit for past losses, so the entire capital gains will be factored in as income unless the money was lost in the same year and would not be a gain.
>
> And I know the IRS, I know how they do it. I know the language in the statute says net. I appreciate that argument. I slaved over it the whole time, it's the only difficult part of his case, but there is absolutely no law that allows me to take past years losses in the current year. There is no Tennessee law, no precedent has ever been done, and if it's going to be done, it needs to be done at the court of appeals level, not here in Knox County Juvenile Court.

As noted by Father, prior to 2007, the Guidelines required that "capital gains" only were to be considered in gross income, and the Tennessee Supreme Court held that although the Internal Revenue Code allows the subtraction of capital losses from capital gains in some cases, the plain language of the Guidelines refers only to "capital gains" and thus capital losses could not be considered for the purposes of calculating income. *Kesser v. Kesser*, 201 S.W.3d 636, 646 (Tenn. 2006). In 2007, however, Tennessee Code Annotated section 36-5-101(e)(1)(B) was amended to provide: "In determining each party's income for the purpose of applying the child support guidelines, the court shall deduct each party's capital losses from that party's capital gains in each year." Tenn. Comp. R. & Regs. 1240-2-04-.04(3)(a)(1)(xiii) was amended to define gross income for calculating child support to include "net capital gains." The Guidelines, however, do not define "net capital gains." Further, under the plain language of § 36-5-101(e)(1)(B), the calculation of "net capital gains" is made on an annual basis. Admittedly, the Guidelines

do not expressly prohibit the carry forward of capital losses over multiple years on an annual basis in the calculation of gross income.

Father contends that subsequent to the 2007 amendment of the Guidelines, in which the Guidelines were amended to include "net capital gains" in annual gross income as opposed to the former "capital gains," a carryover of a capital loss is considered reasonable and consistent with the statute and Guidelines which look to "net capital gains." He asserts that the effect of carryover of long term capital losses is income averaging, a practice which is permitted by the Guidelines when fluctuating income of an obligor parent is at issue. In *Hanselman v. Hanselman*, No. M1998-00919-COA-R3-CV, 2001 WL 252792, (Tenn. Ct. App. Mar. 15, 2001), the court explained that the Guidelines "provide the approach for dealing with fluctuating income," although they "do not prescribe how variable income should be averaged." *Id.* at *3 (citing Tenn. Comp. R & Regs. 1240-2-4-.03(3)(b)). The Guidelines indicate that "variable income such as commissions, bonuses, overtime pay, dividends etc. shall be averaged over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to determine gross income." Tenn. Comp. R & Regs. 1240-2-04-.04. The *Hanselman* Court provided that it had "consistently approved and applied the approach of averaging fluctuating income for periods of a year or longer when the circumstances warrant it," specifically including 2-year periods, 3-year periods and 4-year periods. *Id.* at *4. The court found that the trial court did not err in using a 3-year average of the father's actual income in determining whether his child support obligation should be changed. *Id.* at *5.

In the instant case, Father further contends that federal tax law expressly permits the carryover of capital losses. 26 U.S.C. § 1222 of the Internal Revenue Code defines these terms as follows:

> . . .

> (6) Net short-term capital loss

> The term "net short-term capital loss" means the excess of short-term capital losses for the taxable year over the short-term capital gains for such year.

> (7) Net long-term capital gain

> The term "net long-term capital gain" means the excess of long-term capital gains for the taxable year over the long-term capital losses for such year.

> . . .

(11) Net capital gain

The term "net capital gain" means the excess of the net long-term capital gain for the taxable year over the net short-term capital loss for such year.

In terms of capital loss carryover, the IRS provides as follows:

"Capital loss carryover.  If you have a total net loss on line 16 of Schedule D (Form 1040) that is more than the yearly limit on capital loss deductions, you can carry over the unused part to the next year and treat it as if you had incurred it in that next year.  If part of the loss is still unused, you can carry it over to later years until it is completely used up."

2014 IRS Publication 17, Chapter 16, Reporting Gains and Losses.

Father concedes that he cannot cite to any case law supporting his interpretation of Tennessee Code Annotated section 36-5-101(e)(1)(B).  He argues, however, that his interpretation of the statute is permitted by case law and provisions within the Guidelines that allow for income averaging over a reasonable period of time in cases involving variable income.

We are not persuaded.  Even assuming arguendo that the case law and the provisions of the Guidelines cited by Father allow for a capital loss carry over in certain cases when determining gross income for purposes of calculating child support, it seems unreasonable to allow such a lengthy period of time for income averaging of the capital loss carry forward as we find in this case.  Additionally, there is no evidence in this record concerning Father's gross income for the years 2007 and 2008, the years Father proposes that this court consider his capital losses.  To average variable income over a reasonable period of time, a court would be required to include all income for the period in question.  *See Moore v. Moore*, 254 S.W.3d 357, 360 (Tenn. 2007) (citing Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a)(1) for the proposition that the child support guidelines broadly define gross income to "include all income from any source . . . .").  Further, because the objectives of the child support guidelines differ from the federal income taxation statutes, we do not agree with Father that capital losses for child support purposes should be considered in years other than the year in which they occur.  In our view, the determination of this issue is best left to the legislature rather than the courts.

Accordingly, we find no abuse of discretion in the juvenile court's decision disallowing Father from carrying forward capital losses that occurred during the years 2007, 2008, and 2009 for the purposes of calculating his gross income in subsequent

years under the Guidelines.

## C. Vacation Motion

With regard to the juvenile court's decision to grant Father's vacation motion, Mother asserts that the court erred by modifying the prior 2014 order. According to Mother, that order specifically addressed Father's retirement and anticipated his move to Kingsport. It also set forth a detailed coparenting schedule that would go into effect immediately following the move. Mother contends that under these circumstances, there was not a material change in circumstances as required by Tennessee Code Annotated section 36-6-101(a)(2)(C). Additionally, Mother argues that the vacation order does not address why such a modification of the final order was in the best interest of the Child.

Father asserts that the 2014 order was not a final order appealable as of right. Rather, he chose to file a motion to supplement the provisions of the "final order." Father contends that until the amended child support order was entered on March 1, 2017, there was no true final order appealable as of right. He argues that the existing custody and visitation arrangement was not working because the order did not make any provision for the Child's spring, summer, or fall vacations; he never had more than four parenting days in a row and was not able to travel with his daughter; and he was not able to "enjoy the maximum participation possible" in the Child's life. Father therefore contends that the court properly found that there had been a material change of circumstances to support Father's request for increased coparenting time.

Modification of an existing parenting plan requires a two-step analysis. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 697 (Tenn. 2013) (citing Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C)). The trial court must first determine whether a material change in circumstances has occurred. *Id.* at 697-698. According to Tennessee Code Annotated section 36-6-101(a)(2)(C), a parent must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest," but a "showing of a substantial risk of harm to the child" is unnecessary. If the court finds a material change in circumstances, it must then determine whether a modification of the parenting plan is in the child's best interest in consideration of the factors set forth in Tennessee Code Annotated section 36-6-106(a). *Armbrister*, 414 S.W.3d at 697. While it is true that the material change of circumstances required to modify a visitation order is less burdensome than what is required when a change of custody is sought, "[t]he petitioner still must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interests, and the change must have occurred after entry of the order sought to be modified." *Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *5 (Tenn. Ct. App. Dec. 9, 2015) (citing *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007)). The fact that the change could have been reasonably anticipated at the time that the prior visitation order was entered does not serve as a bar to a finding that a

- 13 -

material change in circumstances has occurred. *Armbrister*, 414 S.W.3d at 703.

In the case at bar, the juvenile court's 2014 order awarded Father coparenting time on specific days through the remainder of 2014 into early 2015. In anticipation of Father's retirement and move to Kingsport on March 8, 2015, the court set forth an eight-day/four-day rotation and also set forth a holiday schedule that equally divided the Christmas/winter holiday and equally divided both Easter and Thanksgiving. The order also provided that the parties could alter the coparenting schedule by agreement. Following the entry of the 2014 order, Mother allowed Father to have additional unscheduled visitation by agreement. The record is devoid of any evidence that Mother ever denied Father any opportunity to take the Child on an extended vacation; to the contrary, Mother revealed that she was willing to work with Father to allow an extended trip.

Mother notes that even assuming arguendo that there was a sufficient evidentiary basis upon which the juvenile court could have justifiably found a material change in circumstances pursuant to Tennessee Code Annotated section 36-6-101(a)(2)(B)(C), the court's order granting Father's request for additional vacation time during the summer, fall, and spring vacations contains no findings of fact or conclusions of law explaining why such a modification of the final order would be in the best interest of the Child when considering the factors set forth by Tennessee Code Annotated section 36-6-106(a). Mother argues that there is insufficient evidence in the record to justify a finding that increasing Father's coparenting time and decreasing Mother's coparenting time is in the best interest of the Child.

The juvenile court noted that Father had relocated to within four miles of his daughter and that the existing coparenting plan was not working as well as it should. In our review, we find that the court's determination of a material change of circumstances satisfies the "very low threshold for establishing a material change of circumstance when a party seeks to modify a residential parenting schedule," even where those changes were reasonably anticipated at the time of the initial plan. *Armbrister*, 414 S.W.3d at 703. Further, a preponderance of the evidence before us reveals the change to a more clearly defined coparenting schedule was in the Child's best interest. The juvenile court therefore did not abuse its discretion in granting Father's motion for vacation time.

### D. Attorney's Fees

This court has the discretion to award attorney's fees on appeal in cases involving child custody and child support issues pursuant to Tennessee Code Annotated section 36-5-103(c). Counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate. *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989). [T]he purpose of attorney's fees in these matters "is to protect the children's, not the custodial parent's, legal remedies." *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

In its decision to award attorney's fees on appeal, a court considers the party's ability to pay fees, the requesting party's success on appeal, the good faith of the appeal, and any other equitable factors. *Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010). Further, the attorney's fees sought must inure to the benefit of the minor child. *Miller v Miller*, 336 S.W.3d 578, 586 (Tenn. Ct. App. 2010).

Under the facts in this case, we do not find an award of fees on appeal to be appropriate. Accordingly, we decline to award attorney's fees to either party.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for enforcement of the lower court's judgment and collection of costs assessed there, all pursuant to applicable law. Costs of the appeal are taxed one-half to the appellee, Susan M. and one-half to the appellant, Warren B.

_____
JOHN W. MCCLARTY, JUDGE